UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.

AMERICAN SECURITY
INSURANCE COMPANY,

      Petitioner,

v.

DAVID W. PUCKETT, an individual,
and PHH MORTGAGE CORPORATION,
a New Jersey corporation,

      Respondents.

_____

## PETITION FOR INTERPLEADER AND DECLARATORY RELIEF

Petitioner American Security Insurance Company ("American Security" or "Petitioner") hereby seeks to interplead previously tendered settlement funds, and further sues Respondent David W. Puckett ("Puckett") for declaratory relief, and states:

## PARTIES, JURISDICTION AND VENUE

1.    This is an action for interpleader and for declaratory relief related to a settlement agreement involving alleged damage to real property previously owned by Puckett.

2.    American Security is a Delaware corporation with its principle place of business located Georgia.

3.   Puckett is an individual *sui generis* who is a citizen of the State of Florida.

4.   PHH Mortgage Corporation ("PHH") is a New Jersey corporation with its principle place of business in New Jersey. PHH Mortgage Services operates as part of PHH.

5.   This action arises under 28 U.S.C. § 1335 (Interpleader) and under the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00 – exclusive of interest, costs, and attorney's fees – and is between citizens of different states.

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, among other things, the subject property that formed the basis for this matter is located in Pinellas County, Florida, and the prior settlement agreement entered had resolved a matter pending before this Court and Puckett had stipulated to this Court's jurisdiction. *See American Security Ins. Co. v. Puckett*, Case No. 8:23-cv-02038-JLB (M.D. Fla.).

7.   All conditions precedent to the commencement of this action have occurred, have been performed, or have been waived.

## FACTUAL ALLEGATIONS

### A.  Background as to History of Property

8.     Puckett is the previous owner of property located at 11120 5th Street East, Treasure Island, Florida 33706 (the "Property").

9.     Puckett was previously a defendant in mortgage foreclosure proceedings concerning the Property. *See Wells Fargo Bank, N.A. v. Puckett*, Case No. 2017 CA 004567 (Pinellas County Cir. Ct.) (the "Foreclosure Case").

10.     At all material times, PHH has served as the mortgage servicer with respect to the mortgage for the Property. On March 12, 2020, a Final Judgment of Foreclosure was entered against Puckett in the Foreclosure Case, and the Court had determined that Puckett owed more than $1.7 million to the lender.

11.     Puckett successfully delayed foreclosure sales for several years, and even filed what Puckett self-described as a "strategic Chapter 13 Bankruptcy" to stop a foreclosure sale scheduled, with the bankruptcy then quickly dismissed. *See In re Puckett*, Case No. 8:23-00090-CPM (Bankr. M.D. Fla.).

12.     On February 11, 2025, the Pinellas County Clerk of the Circuit Court issued a Certificate of Title to the Property to Wells Fargo Bank, National Association as Trustee for Structured Asset Securities Corporation, Mortgage

Pass-Through Certificates, Series 2006-OPT1 ("Owner") c/o PHH Mortgage Corporation.[1]

13.　　Thereafter, Puckett was forced to and did vacate the Property.

**B.　Background for Insurance Claims and First Settlement Agreement**

14.　　American Security issued to the PHH Mortgage Services (the "Lender"), as "Named Insured," and Respondent, David W. Puckett, and Laurie L. Puckett, as the "Borrower[s]," Certificate Number MLR21149641101 (the "Certificate"), effective April 1, 2023 through April 1, 2024, which was a certificate of insurance that provided dwelling coverage in the amount of $469,295 for the Property.[2]

15.　　The Certificate was renewed, and was also effective April 1, 2024 through April 1, 2025, and provided dwelling coverage in the amount of $483,843 for the Property.

16.　　Additionally, American Security issued to Lender, as "Named Insured," and Respondent David W. Puckett and Laurie L. Puckett, as "Additional Insured[s]", Policy Number FLR21142100431, effective April 1, 2023

---

[1] PHH is the loan servicer and has power of attorney to act on behalf of the Owner for this matter, and that PHH is authorized to be a named defendant for this matter.

[2] Laurie and David Puckett divorced more than ten (10) years ago, and Laurie Puckett quitclaimed her interest in the Property to David Puckett. She has not claimed and has no interest in the outcome of this lawsuit.

through April 1, 2024, which was a policy of flood insurance that provided flood coverage in the amount of $250,000 for the Property ("Flood Policy").

17.    The Flood Policy also renewed, and American Security issued to Lender Policy Number FLR21142207539, effective April 1, 2024 through April 1, 2025, which was also a policy of flood insurance that provided flood coverage in the amount of $250,000 for the Property.

18.    On September 13, 2023, Puckett reported to American Security Hurricane Idalia windstorm damages to the Property with an alleged date of loss of August 30, 2023, which was assigned claim number 00201707372 ("Idalia Windstorm Claim").

19.    American Security investigated the Idalia Windstorm Claim, but determined that wind damage was preexisting and potential covered damage did not exceed the Certificate deductible.

20.    On October 2, 2023, Puckett reported to American Security an alleged flood loss under the Flood Policy with an alleged date of loss of August 30, 2023, which was assigned claim number 00201714140 ("Idalia Flood Claim").

21.    American Security accepted coverage for the Idalia Flood Claim in accordance with the terms of the Flood Policy, and issued payment after applications for recoverable depreciation and the subject deductible.

22.     Initially, a disagreement arose between Puckett and American Security regarding coverage for the Idalia Windstorm Claim and the Idalia Flood Claim, and Puckett filed a lawsuit as to the Idalia Windstorm Claim (the "First Lawsuit"), which was removed to this Court and assigned Case No. 8:24-cv-00920.[3]

23.     Puckett's counsel in the First Lawsuit withdrew on the basis of irreconcilable differences with Puckett.

24.     On or about July 31, 2024, Puckett executed a Confidential Settlement and Release Agreement ("First Settlement Agreement") that had resolved the First Lawsuit. A copy of the First Settlement Agreement is attached as **Exhibit A.**

25.     The First Settlement Agreement defined the released "Claims" to include any claim for damages for "any alleged damage from wind, water or flooding at the Property" through the date of the First Settlement Agreement. In connection with the First Settlement Agreement, certain alleged wind damage would be subject to appraisal.

26.     In accordance with the First Settlement Agreement, American Security and Puckett submitted a Joint Stipulation for Dismissal with Prejudice

---

[3] The First Lawsuit was originally assigned to Senior District Judge James S. Moody, Jr., but subsequently reassigned to District Judge Kathryn Kimball Mizelle.

for the First Lawsuit on July 31, 2024. The parties did not request nor did the Court retain jurisdiction to enforce the First Settlement Agreement.

### C. Puckett Breaches First Settlement Agreement, 2024 Insurance Claims, and Events Leading To Second Settlement Agreement

27.     On or about August 20, 2024, Puckett reported another alleged flood loss to American Security with an alleged date of loss in August 2024, which was assigned claim number 00201825968 ("Debbie Flood Claim").

28.     In or about August 2024, Puckett reported another alleged windstorm loss to American Security for alleged damage from September 2022, which was assigned claim number 0029825986 ("Ian Windstorm Claim").

29.     Puckett made it apparent that he did not intend to comply with the appraisal process that he had agreed to through the First Settlement Agreement. Accordingly, on August 27, 2024, American Security brought an action for declaratory relief in this Court relating to the enforcement of the First Settlement Agreement. The case was assigned case number 8:24-cv-2038-JLB-AAS, and assigned to District Judge John L. Badalamenti (the "Second Lawsuit").

30.     Within weeks of filing the Second Lawsuit, the Tampa Bay area sustained back-to-back windstorm events between Hurricane Helene and Hurricane Milton.

31.     On or about September 27, 2024, Puckett reported another alleged flood loss to American Security, which was assigned claim number 00104611168 ("Helene Flood Claim").

32.     On or about September 27, 2024, Puckett reported another alleged windstorm loss to American Security which was assigned claim number 00104611112 ("Helene Windstorm Claim").

33.     On or about October 14, 2024, Puckett reported another alleged windstorm loss to American Security, which was assigned claim number 00104667815 ("Milton Windstorm Claim").

34.     American Security had accepted coverage for the Helene Flood Claim.

35.     Thereafter, on or about November 6, 2024, in connection with mediation, Puckett executed a second Confidential Settlement and Release Agreement (the "Second Settlement Agreement") which, among other things, settled the Idalia Flood Claim, Debbie Flood Claim and Helene Flood Claim (collectively, "Flood Claims") and required, *inter alia,* the Ian Windstorm Claim, Idalia Windstorm Claim, Helene Windstorm Claim and Milton Windstorm Claim (collectively, "Windstorm Claims") be submitted to appraisal pursuant to the terms of the Second Settlement Agreement. A copy of the Second Settlement Agreement is attached as **Exhibit B.**

36.    In accordance with the Second Settlement Agreement, American Security and Puckett submitted a Joint Stipulation for Dismissal with Prejudice for the Second Lawsuit on November 7, 2024. The Court did not retain jurisdiction to enforce the Second Settlement Agreement. *See* Case No. 8:24-cv-02038-JLB-AAS, ECF No. 25.

### D. Puckett Breaches Second Settlement Agreement and Events Leading to Dispute Over Settlement Funds

37.    In November 2024, in accordance with the Second Settlement Agreement, American Security issued payment of two checks totaling $265,000 (the "Flood Settlement Payment") ($250,000 and $15,000, respectively) for the Flood Claims pursuant to the terms of the Second Settlement Agreement.

38.    Pursuant to the Second Settlement Agreement, Puckett was required to "endorse and cooperate with the Lender (including obtaining Lender's endorsement) for the Flood Settlement Payment to be deposited."[4]

39.    Puckett never endorsed and provided PHH with the checks tendered for the Flood Settlement Payment.

40.    In April 2025, American Security reissued the checks for the Flood Settlement Payment. Puckett never endorsed and provided PHH with the reissued checks tendered for the Flood Settlement Payment. Instead, Puckett has

---

[4] As noted above, the subject flood policy was lender placed where the Lender was the Named Insured, which is why Puckett agreed for the Lender to be a named payee for the checks at issue.

made repeated demands for the Flood Settlement Payment to be paid to him personally.

41.    In addition to his failure to endorse the checks for the Flood Settlement Payment, Puckett also failed to comply with the terms of the Second Settlement Agreement that required damage alleged for the wind claims to be submitted for appraisal.

42.    Because Puckett had breached the appraisal provision in the First Settlement Agreement, the Second Settlement Agreement was negotiated, prepared and agreed to include specific language that would either ensure compliance or result in a waiver of any alleged wind damage.

43.    Specifically, the Second Settlement Agreement includes the following operative language at the end of a detailed Section 4 governing appraisal of the Windstorm Claims: "Time is of the essence for all deadlines set forth in this Section. Puckett expressly agrees that if he fails to comply timely with his obligations in this Section, he waives his right to seek any damages in connection with any of the Windstorm Claims."

44.    Puckett failed to comply with the deadlines in Section 4 for appraisal of the Windstorm Claims, and waived his right to pursue any alleged damage for the Windstorm Claims.

45.     American Security has engaged undersigned counsel to prosecute this action and is obligated to pay counsel an hourly fee for their services.

46.     All conditions precedent to the prosecution of this action have been performed, satisfied, excused or waived.

## COUNT I – INTERPLEADER OF FLOOD SETTLEMENT PAYMENT

47.     American Security realleges and incorporates Paragraphs 1 through 46 as if fully set forth herein.

48.     28 U.S.C. § 1335 provides the district court with original jurisdiction of any civil action for interpleader where the value is in excess of $500 and there are two or more adverse claimants claiming entitlement to such funds.

49.     Here, Puckett and PHH are each claiming entitlement to the Flood Settlement Payment totaling $265,000.

50.     In the event that American Security were to tender the Flood Settlement Payment to either PHH or Puckett directly, it would expose itself to potential double litigation. Puckett has rejected the proposal for the funds to be deposited into an account held by PHH pending resolution of the dispute as between Puckett and PHH, thereby requiring American Security to seek court intervention to interplead the funds.

51.     American Security requests that this Honorable Court take jurisdiction over this action and enter a judgment declaring that:

(a) Puckett and PHH are restrained from instituting any action against American Security for recovery of the Flood Settlement Payment;

(b) Puckett and PHH are required to interplead and settle among themselves their rights to the Flood Settlement Payment, and that American Security is discharged from all liability;

(c) American Security is entitled to recover costs and reasonable attorneys' fees; and

(d) Such further relief as the Court deems just and proper.

## COUNT II – PETITION FOR DECLARATORY RELIEF
### (against Respondent Puckett)

52.     American Security realleges and incorporates Paragraphs 1 through 46 as if fully set forth herein.

53.     Puckett materially breached the Second Settlement Agreement by failing to comply with the appraisal provision in the Second Settlement Agreement.

54.     Among other things, Puckett has failed to identify an appraiser and failed to proceed to appraisal in the timeframe allotted in the Second Settlement Agreement.

55.     Pursuant to the express terms of the Second Settlement Agreement, Puckett's failure to timely comply with the obligations in the appraisal section of the Second Settlement Agreement resulted in a waiver of claims for any damages in connection with any of the Windstorm Claims.

56.    Notwithstanding the clear and unambiguous language in the Second Settlement Agreement, Puckett has continued to make demands to American Security for a payment to settle the Windstorm Claims, despite no longer even having an interest in the Property.

57.    Even after being placed on notice of his default, Puckett repeatedly badgered American Security, demanding payment on new terms not contemplated by the Second Settlement Agreement. Puckett's demands are barred by the Second Settlement Agreement.

58.    American Security seeks declaratory relief that (1) no additional amounts are owed by American Security to Puckett based on Puckett's breach of the Second Settlement Agreement; and (2) American Security is relieved from any obligation to tender payment in connection with the Windstorm Claims. *See Mattocks v. Black Ent. Television LLC*, 43 F. Supp. 3d 1311, 1391 (S.D. Fla. 2014) ("It is a fundamental principle of Florida contract law that a material breach by one party excuses performance by the other party").

59.    There is a bona fide, actual, present practical need for a declaration concerning the parties' rights and obligations relating to whether American Security is relieved or will be relieved from its obligations defined in the Second Settlement Agreement due to Puckett's failure to comply with material terms contained therein.

60.    Puckett and American Security have an actual, present, adverse and antagonistic interest relating to the Second Settlement Agreement, and specifically the impact of Puckett's material breach with respect to the parties' rights and obligations under the Second Settlement Agreement.

61.    American Security requests that this Honorable Court take jurisdiction over this action and enter a judgment declaring that:

(a) Puckett has materially breached the Second Settlement Agreement by failing to comply with the appraisal provision in the Second Settlement Agreement;

(b) American Security is relieved of any obligation to pay damages for the Windstorms Claims in accordance with the waiver provision in the Second Settlement Agreement;

(c) American Security is entitled to recover costs and reasonable attorneys' fees to the extent any conduct by Puckett establishes a breach of the Covenant Not to Sue provision in the Second Settlement Agreement, which includes any asserted claim or defense by Puckett that he is entitled to further payment for anything released as part of the Second Settlement Agreement; and

(d) Such further relief as the Court deems just and proper.

WHEREFORE, American Security requests the Court enter declaratory relief as requested herein, award reasonable attorneys' fees and costs as may be allowed in connection with the Second Settlement Agreement, 28 U.S.C. § 1335 or Florida law, and for such other relief as the Court deems just and proper.

DATED this 5th day of January, 2026.

Respectfully Submitted,

_s/ Brian H. Koch_
HOLLAND & KNIGHT LLP
Brian H. Koch (Fla. Bar No. 637335) (LEAD)
brian.koch@hklaw.com
Joseph S. Menniti (Fla. Bar No. 1049432)
joseph.menniti@hklaw.com
515 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Tel: 954.525.1000
Fax: 954.463.2030
_Counsel for American Security Ins. Co._

# EXHIBIT A

# FIRST SETTLEMENT AGREEMENT

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement is entered into by and between: (1) David W. Puckett; and (2) American Security Insurance Company.

1. **<u>Definitions</u>**.

   A.    "Plaintiff" shall mean David W. Puckett.

   B.    "Co-Borrower" shall mean Laurie L. Puckett.

   C.    "Releasors" shall mean Plaintiff, and his individual heirs, family members, assigns, successors, transferees, agents, contractors, representatives, attorneys, and insurers not a party to this Settlement Agreement (that is, insurers other than the Released Parties described herein).

   D.    "Company" shall mean American Security Insurance Company.

   E.    "Lender" shall mean PHH Mortgage Services, and its successors and assigns.

   F.    "Released Parties" shall mean the Company, together with all of its divisions, affiliates, parent corporations, sister corporations, subsidiary corporations, transferees, assignees, predecessors, and successors; and all officers, directors, shareholders, employees, agents, representatives, administrators, executors, and attorneys of the Company and its divisions, affiliates, parent corporations, sister corporations, subsidiary corporations, transferees, assignees, predecessors, and successors.

   G.    "Parties" shall mean collectively Plaintiff and the Company.

   H.    "Settlement Agreement" shall mean this document – the Confidential Settlement and Release Agreement.

   I.    "Date of this Settlement Agreement" shall mean the date Plaintiff signs this Settlement Agreement.

   J.    "Property" shall mean the real property located at 11120 E. 5th Street, Treasure Island, FL 33706.

   K.    "Lawsuit" shall mean the civil action styled *David W. Puckett v. American Security Insurance Company,* Case No. 8:24-cv-00920-KKM, pending in the United States District Court for the Middle District of Florida.

   L.    "CRN" shall mean the Civil Remedy Notice of Insurer Violation Filing No. 741319 filed on February 7, 2024, which CRN shall be deemed released and withdrawn as part of this agreement.

M.   The term "Claims" shall mean all claims, demands, damages, liabilities, rights, actions, causes of action, lawsuits, complaints, insurance department complaints, Florida Civil Remedy Notices (including, but not limited to CRN No. 741319), violations of any state or federal law, regulation, order or mandate, expenses, costs, attorney's fees, or damages of whatsoever kind or nature (including, but not limited to, compensatory damages, punitive damages, contract or tort damages, interest, extra-contractual damages, bad faith damages, consequential damages, inconsequential damages, and penalties known or unknown, foreseen or unforeseen, developed or undeveloped, discoverable or presently incapable of being discovered) which have been made, could have been made, and/or may be made in the future by Plaintiff arising out of and/or relating to any matter alleged in the CRN and/or the Lawsuit, any alleged damage from wind, water or flooding at the Property, as well as to those which the Company assigned claim numbers 00201707372 and 00201714140.

N.   The term "Policy" shall mean collectively all documents providing or evidencing any application for insurance, insurance coverage, certificate of insurance, and/or policy of insurance between Plaintiff and the Company.

O.   Other terms are defined where they are used in this Settlement Agreement.

The Parties understand and agree to all of the Definitions set forth in this Settlement Agreement.

## 2.   <u>**Recitals**</u>.

The Parties understand and agree that the following recitals are true and correct and constitute a material part of this Settlement Agreement.

A.   The Lender extended a loan to Plaintiff and Co-Borrower in connection with the Property, recorded under loan number 7143943418, and the Lender held a mortgage on said property.

B.   The Company issued to the Lender, as Named Insured, and Plaintiff, David W. Puckett, and Laurie L. Puckett, as the Borrowers, Certificate Number MLR21149641101, effective April 1, 2023 through April 1, 2024, which was a certificate of insurance that provided dwelling coverage in the amount of $469,295 for the Property. Additionally, the Company issued to Lender, as Named Insured, and Plaintiff David W. Puckett and Laurie L. Puckett, as Additional Insureds, Policy Number FLR21142100431, effective April 1, 2023 through April 1, 2024, which was a policy of flood insurance that provided flood coverage in the amount of $250,000 for the Property ("Flood Policy").

C.   On September 13, 2023, Plaintiff reported an alleged windstorm loss to the Company under the Certificate with an alleged date of loss of August 30, 2023, which was assigned claim numbers 00201707372 ("Idalia Windstorm Claim").



D.  American Security investigated the Idalia Windstorm Claim, but determined that wind damage was preexisting and potential covered damage did not exceed the Certificate deductible.

E.  On October 2, 2023, Plaintiff reported an alleged flood loss to the Company under the Flood Policy with an alleged date of loss of August 30, 2023, which was assigned claim numbers 00201714140 ("Flood Claim").

F.  American Security accepted coverage for the Flood Claim in accordance with the terms of the Flood Policy, and issued payment for $22,401.83 ("Prior Payment") after applications for recoverable depreciation and the subject deductible.

G.  Subsequently, a disagreement arose between Plaintiff and the Company regarding coverage for the Idalia Windstorm Claim and the Flood Claim, and Plaintiff filed the Lawsuit as to the Idalia Windstorm Claim.

H.  During the course of the Lawsuit, Plaintiff has claimed that wind damage may have been attributed to Hurricane Ian instead of Hurricane Idalia as had been reported to American Security. The statute of limitations has not yet run for Plaintiff to report a Hurricane Ian claim.

I.  During the course of the Lawsuit, Plaintiff has claimed that the flood waters with respect to the Flood Claim have caused damage to the cast iron drainage system at the Property.

J.  Company denies liability for all allegations, causes of action, counts, legal claims, and damages Plaintiff alleges or may allege with respect to the CRN or the Lawsuit.

K.  The Parties, in order to avoid the mutual risk, inconvenience, and expense of litigation, have agreed to forever settle, compromise, and release any and all Claims between them that exist or may exist as of the date of this Settlement Agreement, whether known or unknown associated with claim numbers 00201707372 and 00201714140, and the CRN and/or Lawsuit filed on behalf of Plaintiff pursuant to this Release.

L.  Plaintiff represents that he divorced from Co-Borrower, Laurie Puckett, in 2006, and she signed a deed transferring any interest in the Property that she had to Plaintiff in April 2007. Plaintiff represents that he has been the sole owner of the Property since 2007, and that Co-Borrower has no interest in the Property.

M.  For the good and valuable consideration recited herein, the receipt and sufficiency of which are acknowledged by the Parties, the Parties understand and agree to the terms set forth in this Settlement Agreement.

3



3.    **Appraisal**.

The parties have agreed to submit Plaintiff's flood and wind damage claims to appraisal, and the payment of further payment with respect to either the Windstorm Claim or the Flood Claim will be governed by an appraisal award, and in accordance with the terms of this Agreement.

Plaintiff shall provide to the Company's counsel with this Settlement Agreement bearing the duly notarized original signatures of Plaintiff, and an executed Joint Stipulation of Dismissal (without costs, interest, adjuster's fees, or attorney's fees), with Prejudice of the Lawsuit ("Joint Stipulation"). Upon receipt, American Security's counsel is authorized to file the Joint Stipulation in the Lawsuit.

Within seven (7) days following the returned executed Settlement Agreement, Plaintiff and the Company shall each designate an appraiser. The party appraisers shall then select an umpire within 14 days.

The appraisal panel shall enter separate appraisal awards for (1) damages in connection with Flood Claim, including any damages associated with the cast iron drainage system at the Property that may have been caused by flood waters ("Flood Appraisal"); and (2) damages for the Idalia Windstorm Claim, whether such wind damage was caused by Hurricane Ian or by Hurricane Idalia ("Wind Appraisal"). It is expressly acknowledged that Plaintiff does not have to submit a separate wind claim for Hurricane Ian damage or a separate supplemental flood claim for alleged cast iron drainage system damages, and alleged damages will be addressed in the discretion of the appraisal panel. Nothing herein requires the appraisal panel to award any amounts for cast iron damages if the appraisal panel determines that flood waters did not cause damages to the cast iron drainage system at the Property.

There shall be no duplication of damages as between the Flood Appraisal and the Wind Appraisal. The appraisal panel shall be provided a copy of the Certificate and the Flood Policy, and the awards shall take into consideration the terms and conditions of the Certificate and Flood Policy.  The Flood Appraisal and Wind Appraisal shall only include physically damaged property (as determined by the appraisal panel), without consideration for matching as there is no matching available as the subject policies are lender-placed and not subject to Florida's matching statute. The appraisers may take into consideration whether there was damage at the Property prior to Hurricane Ian, which would not be covered in connection with the Appraisals.

Within twenty (20) business days' receipt of the Appraisal Awards, American Security shall tender payment based on the Appraisal Awards without objection, but the awards may be reduced by applicable deductibles and any prior payments. American Security, at its discretion and in accordance with the terms of the Flood Policy and Certificate, may condition payment of any recoverable depreciation or ordinance & law coverage (if applicable) on the completion of repairs, which shall be completed within six (6) months following the Appraisals. Each party shall be responsible to pay for its own appraiser, but American Security will agree to pay the costs for the umpire.  No appraiser may have their fee contingent on the amount of the Appraisal Awards.



In the event that the parties' appraisers cannot agree on an umpire, American Security's counsel will propose three candidates to Plaintiff that have either (1) served as a neutral umpire for at least 250 claims; or (2) have served in a judicial capacity. Plaintiff will then have three days to choose one of the proposed umpires to be the umpire for the Appraisals. The party appraisers shall cooperate on scheduling and take reasonable steps for the Appraisals to be completed within 90 days of the appraisers' appointment.

Other than the payment of the Appraisal Awards as set forth herein, there shall be no other amounts due and owing for the Idalia Windstorm Claim or the Flood Claim, or for any damages released hereunder.

**4.    Release of All Claims by Releasors against Released Parties**.

Plaintiff, for himself and on behalf of all Releasors, release and discharge the Released Parties from any and all claims, whatsoever, whether such claims are known or unknown, foreseen or unforeseen, developed or undeveloped, discoverable or presently incapable of being discovered, relating in any way to any past or current damage at the Property, including, but not limited to: (a) all Claims, whether or not asserted in the CRN and/or the Lawsuit or in any lawsuit, complaint in equity, or state or federal agency or administrative proceeding; and (b) all claims (present, past or future) arising out of any actual or alleged duty, or contractual, or legal relationship, express or implied, between Plaintiff and the Released Parties related to the Claims.

This Settlement Agreement waives, releases, and prohibits all Claims, whether based on contract or tort, law or equity, and no matter the legal theory or requested relief or remedy, including, but not limited to, Claims for breach of contract, negligence, good faith and fair dealing, common law or statutory bad faith, statutory penalties, appraisal rights, appeal rights, breach of implied duties or contracts, quantum meruit, unjust enrichment, restitution, misrepresentation, strict liability misrepresentation, negligent misrepresentation, fraudulent misrepresentation, breach of fiduciary duty, fraud, constructive fraud, consumer fraud, unfair or deceptive practices, estoppel, unclean hands, attorney's fees, punitive damages, agency, negligent hiring, negligent retention, negligent supervision, agent misconduct, vicarious liability, respondeat superior, violations or administrative codes, violations of insurance codes, or violations of state or federal statutes, regulations, orders, rules, or mandates related to the Claims.

**5.    No Assignments – Indemnification**.

Plaintiff represents and warrants that he has not assigned any rights, title, damages, benefits, or interests in the Lawsuit, the Claims or the Policy to any other person or entity. Plaintiff understands and agrees to indemnify, defend, and hold harmless the Released Parties from any and all Claims that may be asserted against any of the Released Parties relating in any way to: (a) any and all claims specifically related to claim numbers 00201707372 and 00201714140; (b) all Claims asserted in the Lawsuit filed on behalf of Plaintiff; (c) all Claims that could have been asserted in the Lawsuit or in any other lawsuit, complaint in equity, or state or federal agency or administrative proceeding specifically related to claim numbers 00201707372 and 00201714140; (d) all claims under the Certificate related to the Property; (e) all Claims arising out of any actual or alleged duty, or contractual, or legal relationship, express or implied, between Plaintiff and the Released Parties arising from the Claims; and (f) any claims, liens, demands, garnishments, subrogations, or causes



of action brought by Plaintiff's public adjuster(s), family members, heirs, attorneys, insurers not a party to this Settlement Agreement (that is, insurers other than the Released Parties), agents, adjusters, experts, contractors, mortgagees, creditors, lenders, health care providers, or medical professionals.

**6.**     **No Admission of Liability**.

Plaintiff understands and agrees that nothing in this Settlement Agreement is to be construed as an admission of liability by the Company or any of the Released Parties. Plaintiff acknowledges that the Company denies liability of any type. Nothing herein is an admission of coverage with respect to any assignment of benefits claims that may be asserted in connection with the Claims.

**7.**     **Plaintiff Is Not Relying On Statements by the Company**.

Plaintiff understands and agrees that in accepting the terms of this Settlement Agreement and signing this Settlement Agreement he is relying on his own judgment, belief, and knowledge, and not on any representations or statements made by the Company or anyone representing the Company. Plaintiff acknowledges that this Settlement Agreement accurately reflects all of the terms of the Parties' settlement and that no other promise, inducement, or agreement exists between the Parties other than is expressed within the four corners of this Settlement Agreement. Plaintiff stipulates that this Settlement Agreement constitutes the entire agreement between the Parties.

Plaintiff acknowledges that discovery in the Lawsuit was not completed, and that Plaintiff might have learned additional facts during the course of the Lawsuit that could have affected Plaintiff's position in the Lawsuit and affected Plaintiff's decision to enter into this Settlement Agreement. Plaintiff nevertheless has intentionally and voluntarily decided, after having the opportunity to consult or otherwise consulting with Plaintiff's counsel, to settle the Lawsuit at this time under the terms of this Settlement Agreement to avoid further expense, inconvenience, and uncertainty.

**8.**     **Tax Consequences**.

The Company makes no representation regarding any tax consequences associated with the terms of this Settlement Agreement. Plaintiff understands and agrees that the Company has no responsibility for any tax liability they may incur as a consequence of this Settlement Agreement or any payment hereunder.

**9.**     **Confidentiality**.

Plaintiff may disclose that the Lawsuit has been settled or resolved by mutual agreement and to the mutual satisfaction of the Parties. However, Plaintiff specifically represents and agrees that, except as provided in the following Paragraph, he will not disclose to any person or entity the terms of this Settlement Agreement, the fact of payment by the Company, the amount of payment by the Company, the facts and circumstances relating to the Lawsuit, including all aspects of the Company's handling and treatment of Plaintiff's claims, or any other non-public fact surrounding the Lawsuit or the settlement of the Lawsuit.



The confidentiality provisions of this Settlement Agreement shall not apply: (a) to disclosures Plaintiff makes to the Lender, (b) to disclosures Plaintiff is required to make by applicable laws, regulations, or orders of courts of competent jurisdiction; (c) to disclosures to third parties who have a legitimate need to know the amount or terms of this Settlement Agreement (such as Plaintiff's attorneys, accountants, lenders, financial or tax advisors); or (d) to any action brought to enforce the terms of this Settlement Agreement, but only to the extent necessary to prosecute that action. Should Plaintiff or his agents (including attorneys) disclose confidential information, the person or entity to whom the information is disclosed shall be advised that the information is confidential and must be so kept. Any breach of confidentiality by a person or entity to whom Plaintiff and his agents (including attorneys) disclose confidential information is chargeable to Plaintiff. Plaintiff understands and agrees that the confidentiality provisions of this Settlement Agreement are material terms of the Settlement Agreement.

**10.    <u>Non-Disparagement</u>.**

Plaintiff and his agents (including attorneys) agree not to make any disparaging statements (oral or written), directly or indirectly, to the media or members of the general public, or with the intent the statements reach the media or the general public, about the Company and the Released Parties (including, without practices or policies), the Lawsuit, the CRN, the Certificate or the Flood Policy. Disparaging statements include statements that are false, statements that are misleading, and statements that might tend to cast the Company of Released Parties in a negative light, regardless of their truth or falsity.

**11.    <u>Covenant Not To Sue</u>.**

Plaintiff, for himself and on behalf of all Releasors, agree that none of them will commence any future lawsuit, action, or complaint of any nature against any Released Party relating to: (a) Claims asserted in the CRN and/or the Lawsuit; (b) Claims that could have been asserted in the CRN and/or the Lawsuit or in any other legal, equitable, agency or administrative proceeding; (c) Claims under the Certificate and  Policy that have been released, as more fully set forth in paragraph 4; or (d) Claims arising out of any actual or alleged contractual relationship, express or implied, between Plaintiff and the Company or the Released Parties related to the Claims. If Plaintiff violates this covenant not to sue, any Released Party shall be entitled to recover from Plaintiff all reasonable attorneys' fees and costs incurred by the Released Party in defending against any claims.

**12.    <u>Right To Cure</u>.**

The Parties agree that if any Party believes any other Party has breached the terms of this Settlement Agreement, the Party believing a breach has occurred must give the other Parties written notice of any alleged breach and a 14-day right to cure prior to initiating an action for breach of this Settlement Agreement.

**13.    <u>Choice of Jurisdiction and Law</u>.**

If a dispute arises between the Parties concerning the subject matter of this Release, the Parties agree that any action filed in connection with the dispute shall be filed in state or federal



court in the State of Florida and that the law of the State of Florida shall apply to the interpretation and enforcement of the Release, without reference to choice of law principles.

**14.**    **Entire Agreement/Amendments – Merger**.

The Parties understand and agree that this Settlement Agreement constitutes the entire agreement and understanding between the Parties and this Settlement Agreement supersedes all prior oral and written agreements, understandings, statement, and representations.  The Parties understand and agree that any amendment to this Settlement Agreement must be in writing and signed by the Parties.

**15.**    **Mutual Drafting and Construction**.

The Parties understand and agree that this Settlement Agreement is purely voluntary and was prepared for the mutual benefit of the Parties.  Neither Plaintiff nor the Company shall be considered to be a unilateral or singular drafter of this Settlement Agreement.  The Parties stipulate they had the opportunity to have their respective counsel (if any) review and approve this Settlement Agreement. The Parties understand and agree that this Settlement Agreement shall be interpreted in accordance with the plain meaning of its terms and shall not be construed strictly for or against any of the Parties.

**16.**    **Severability**.

If any provision of this Settlement Agreement is held by a court of competent jurisdiction to be invalid or to conflict with applicable federal, state or local law, the Settlement Agreement shall be deemed to be reformed to remove that invalid provision. However, all remaining provisions of the Settlement Agreement shall remain in full force and effect.

**17.**    **Execution by Plaintiff Sufficient – Execution by Company Not Required**.

Plaintiff understands and agrees that this Settlement Agreement will not be executed by the Company or the Released Parties in order for this Settlement Agreement to be fully effective and binding upon execution by Plaintiff.

**18.**    **Signature(s)**

The Parties understand, stipulate and agree that a facsimile or electronic transmission of any signature of any person(s) signing this Settlement Agreement is fully effective and as binding as an original signature delivered to the other party.


**[SIGNATURE PAGES TO FOLLOW]**



**THE PERSONS SIGNING THIS SETTLEMENT AGREEMENT AGREE AND REPRESENT AS FOLLOWS: THEY HAVE READ THE SETTLEMENT AGREEMENT, THEY UNDERSTAND THE SETTLEMENT AGREEMENT, THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOOSING ABOUT THE MEANING AND CONSEQUENCES OF THE SETTLEMENT AGREEMENT, THEY HAVE HAD THE SETTLEMENT AGREEMENT TRANSLATED FOR THEM (IF APPLICABLE), AND THEY FREELY AND VOLUNTARILY SIGN THE SETTLEMENT AGREEMENT.**

DocuSigned by:

_____          July 31, 2024
**Plaintiff:  David W. Puckett**                              **Date**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:24-cv-980-KKM

**DAVID W. PUCKETT,**

      Plaintiff,

vs.

**AMERICAN SECURITY INSURANCE
COMPANY,**

      Defendant.

_____/

## **JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE**

      Plaintiff, David W. Puckett, and Defendant, American Security Insurance

Company, pursuant to Fed. R. Civ. P. 41, hereby stipulate that the above-captioned

action, including all claims, is voluntarily dismissed with prejudice, with each side to

pay their own fees and costs.

Respectfully Submitted,

| | |
|---|---|
| _s/ David W. Puckett_ | _s/ Brian H. Koch_ |
| David W. Puckett | Brian H. Koch, Esq. |
| 11120 E. 5th Street | Florida Bar No. 637335 |
| Treasure Island, Florida 33706 | HOLLAND & KNIGHT LLP |
| info@cognitive-rs.com | 515 East Las Olas Boulevard, Suite 1200 |
| _Plaintiff, Pro Se_ | Fort Lauderdale, Florida 33301 |
| | Tel: 954. 525.1000 |
| | Fax: 954.463.2030 |
| | brian.koch@hklaw.com |
| | _Counsel for Defendant_ |



# EXHIBIT B

# SECOND SETTLEMENT AGREEMENT

## <u>CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT</u>

This Confidential Settlement and Release Agreement is entered into by and between: (1) David W. Puckett; and (2) American Security Insurance Company ("American Security").

1.     <u>Definitions</u>.

    A.     "Puckett" shall mean David W. Puckett.

    B.     "Releasors" shall mean Puckett, and his individual heirs, family members, assigns, successors, transferees, agents, contractors, representatives, attorneys, and insurers not a party to this Settlement Agreement (that is, insurers other than the Released Parties described herein).

    C.     "Company" shall mean American Security Insurance Company.

    D.     "Lender" shall mean PHH Mortgage Services, and its successors and assigns.

    E.     "Released Parties" shall mean the Company, together with all of its divisions, affiliates, parent corporations, sister corporations, subsidiary corporations, transferees, assignees, predecessors, and successors; and all officers, directors, shareholders, employees, agents, representatives, administrators, executors, and attorneys of the Company and its divisions, affiliates, parent corporations, sister corporations, subsidiary corporations, transferees, assignees, predecessors, and successors.

    F.     "Parties" shall mean collectively Puckett and the Company.

    G.     "Settlement Agreement" shall mean this document – the Confidential Settlement and Release Agreement.

    H.     "Date of this Settlement Agreement" shall mean the date Puckett signs this Settlement Agreement.

    I.     "Property" shall mean the real property located at 11120 E. 5th Street, Treasure Island, FL 33706.

    J.     "Lawsuit" shall mean the civil action styled *American Security Insurance Company v. Puckett,* Case No. 8:24-cv-02038, pending in the United States District Court for the Middle District of Florida.

    K.     The term "Claims" shall mean all claims, demands, damages, liabilities, rights, actions, causes of action, lawsuits, complaints, insurance department complaints, Florida Civil Remedy Notices ("CRN"), violations of any state or federal law, regulation, order or mandate, expenses, costs, attorney's fees, or damages of whatsoever kind or nature (including, but not limited to, compensatory damages, punitive damages, contract or tort damages, interest, extra-contractual damages, bad faith damages, consequential damages, inconsequential damages, and penalties

Initial

known or unknown, foreseen or unforeseen, developed or undeveloped, discoverable or presently incapable of being discovered) which have been made, could have been made, and/or may be made in the future by Puckett arising out of and/or relating to any matter alleged in the Lawsuit, any alleged damage from flooding at the Property, any alleged damage to the Property from wind or other water damage, as well as to those which the Company assigned claim numbers 00201714140 (Idalia Flood), 00201825968 (Debbie Flood), 00104611168 (Helene Flood), 0029825986 (Ian Wind), 00201707372 (Idalia Wind), 00104611112 (Helene Wind), and 00104667815 (Milton Wind).

L.    The term "Policy" shall mean collectively all documents providing or evidencing any application for insurance, insurance coverage, certificate of insurance, and/or policy of insurance between Puckett and the Company.

M.    "Prior Agreement" means the previously entered settlement agreement dated July 31, 2024 that Puckett entered, which forms the basis of the Company's Complaint in the Lawsuit.

N.    Other terms are defined where they are used in this Settlement Agreement.

The Parties understand and agree to all of the Definitions set forth in this Settlement Agreement.

## 2.    <u>Recitals</u>.

The Parties understand and agree that the following recitals are true and correct and constitute a material part of this Settlement Agreement.

A.    The Lender extended a loan to Puckett in connection with the Property, recorded under loan number 7143943418, and the Lender holds a mortgage on said property.

B.    The Company issued to the Lender, as Named Insured, and David W. Puckett, as an Additional Insured, Policy Number FLR21142100431, effective April 1, 2023 through April 1, 2024, which was a policy of flood insurance that provided flood coverage in the amount of $250,000 for the Property ("Flood Policy During Idalia").

C.    The Company issued to the Lender, as Named Insured, and David W. Puckett, as an Additional Insured, Policy Number FLR21142207539, effective April 1, 2024 through April 1, 2025, which was a policy of flood insurance that provided flood coverage in the amount of $250,000 for the Property ("Flood Policy During Helene").

D.    The Company issued to the Lender, as Named Insured, and David W. Puckett, as the Borrower, Certificate Number MLR21149641101, effective April 1, 2023 through April 1, 2024, which was a certificate of insurance that provided dwelling coverage in the amount of $469,295 for the Property ("Wind Policy During Idalia").



E.    The Company renewed the Wind Policy During Idalia, which renewal certificate was effective April 1, 2024 through April 1, 2025, which was a certificate of insurance that provided dwelling coverage in the amount of $483,843 for the Property ("Wind Policy During Helene").

F.    On October 2, 2023, Puckett reported an alleged flood loss to the Company under the Flood Policy During Idalia with an alleged date of loss of August 30, 2023, which was assigned claim number 00201714140 ("Idalia Flood Claim"). American Security accepted coverage for the Idalia Flood Claim in accordance with the terms of the Flood Policy During Idalia, and issued payment for $22,401.83 after applications for recoverable depreciation and the subject deductible.

G.    On or about September 27, 2024, Puckett reported an alleged flood loss to the Company under the Flood Policy During Helene, which was assigned claim number 00104611168 ("Helene Flood Claim"). American Security advised Puckett that it planned to extend coverage for the Helene Flood Claim, which is being resolved as part of this Settlement Agreement.

H.    On or about August 20, 2024, Puckett reported an alleged flood loss to the Company under the Flood Policy During Helene, which was assigned claim number 00201825968 ("Debbie Flood Claim"). American Security had requested an Examination Under Oath of Puckett in connection with the Debbie Flood Claim, which remained pending at the time of this Agreement.

I.    On September 13, 2023, Puckett reported an alleged windstorm loss to the Company under the Wind Policy During Idalia, which was assigned claim number 00201707372 ("Idalia Windstorm Claim"). American Security determined that wind damage observed during the inspection for the Idalia Windstorm Claim was preexisting and potential covered damage did not exceed the Wind Policy During Idalia deductible.

J.    In or about August 2024, Puckett reported an alleged windstorm loss to the Company for an alleged date of loss of September 28, 2022 based on the Certificate in effect for the Property for the period from April 1, 2022 through April 1, 2023, which was assigned claim number 0029825986 ("Ian Windstorm Claim"). The Company asserted that any alleged damages for the Ian Windstorm Claim were subject to the Parties' Prior Agreement.

K.    On or about September 27, 2024, Puckett reported an alleged windstorm loss to the Company under the Wind Policy During Helene, which was assigned claim number 00104611112 ("Helene Windstorm Claim"). American Security had not completed its investigation of the Helene Windstorm Claim at the time of this Settlement Agreement.

L.    On or about October 14, 2024, Puckett reported an alleged windstorm loss to the Company under the Wind Policy During Helene, which was assigned claim number 00104667815 ("Milton Windstorm Claim"). American Security had not completed

Initial

its investigation of the Milton Windstorm Claim at the time of this Settlement Agreement.

M.     A disagreement arose between Puckett and the Company regarding amounts for coverage in connection with the Idalia Flood Claim, Debbie Flood Claim and Helene Flood Claim (collectively, "Flood Claims").

N.     A disagreement arose between Puckett and the Company regarding amounts of coverage in connection with the Ian Windstorm Claim, Idalia Windstorm Claim, Helene Windstorm Claim and Milton Windstorm Claim (collectively, "Windstorm Claims"). The Parties had previously agreed to have damages in connection with the Idalia Flood Claim and Idalia Windstorm Claim appraised, pursuant to the Prior Agreement, and the Parties had agreed that any wind damages from Hurricane Ian would be appraised and considered as part of the Idalia Windstorm Claim.

O.     Following execution of the Prior Agreement, Puckett did not identify an appraiser that had agreed to serve as his appraiser pursuant to the Prior Agreement, and American Security filed the Lawsuit alleging Puckett had breached the Prior Agreement.

P.     The Parties, in order to avoid the mutual risk, inconvenience, and expense of litigation, have agreed to forever settle, compromise, and release any and all of the Flood Claims and Windstorm Claims between them that exist or may exist as of the date of this Settlement Agreement, whether known or unknown.

Q.     Puckett represents that he divorced from Laurie Puckett, in 2006, and she signed a deed transferring any interest in the Property that she had to Puckett in April 2007. Puckett represents that he has been the sole owner of the Property since 2007, and that Laurie Puckett has no interest in the Property or any of the Policies.

R.     For the good and valuable consideration recited herein, the receipt and sufficiency of which are acknowledged by the Parties, the Parties understand and agree to the terms set forth in this Settlement Agreement.

**3.     <u>Settlement Payment for Flood Claims.</u>**

Puckett shall provide the Company's counsel with this fully executed Settlement Agreement bearing a verified signature for Puckett. Thereafter, the Company shall issue one or more checks that collectively total $265,000 ("Flood Settlement Payment") as follows:

(i)     total payment of $265,000 payable to David Puckett and PHH Mortgage Services.

American Security agrees to cover the costs for mediator Christy Brigman. At its sole discretion, American Security may allocate the Flood Settlement Payment between any of the Flood Claims. There shall be no other payments due and owing with respect to the Flood Claims. If the Flood Settlement Payment is sent directly to Puckett, before any attempt is made to deposit the payment, Puckett shall endorse and cooperate with the Lender (including obtaining Lender's endorsement) for the Flood Settlement Payment to be deposited. Puckett may not unilaterally attempt to deposit



the Flood Settlement Payment without Lender's endorsement, and such would otherwise be a material breach of this Settlement Agreement.[1] For purposes of this Agreement, Puckett's mailing address is: Ocean Five Hotel, Guest: David Puckett, Suite 364, 436 Ocean Drive, Miami Beach, Florida 33139. Puckett may update his mailing address for purpose of this Agreement by emailing counsel for American Security.

4.    **Appraisal of Windstorm Claims.**

The Parties have agreed to submit Puckett's Windstorm Claims to appraisal, and the payment of further payment with respect to any of the Windstorm Claims will be governed by appraisal awards, and in accordance with the terms of this Agreement.

Within five (5) days following the returned executed Settlement Agreement, the Company shall email Puckett a list of three (3) engineering firms to be considered to send an engineer to the Property to evaluate whether or not there is structural damage, and whether or not the structural damage (if any) is attributable to flooding and/or wind. Within five (5) days of receipt of the list of proposed engineering firms, Puckett shall choose one of the firms to conduct the structural damage assessment (the "Structural Assessment"). American Security will engage the firm chosen by Puckett to conduct the Structural Assessment, and cover the costs for the Structural Assessment. The Structural Assessment shall proceed promptly by the firm selected to conduct the Structural Assessment, and such firm shall be provided complete access to all portions of the Property as such firm considers it needs access to for performing the Structural Assessment. The firm will be directed to complete its Structural Assessment within thirty (30) days of engagement.

Within fifteen (15) days following the returned executed Settlement Agreement, Puckett and the Company shall each designate an appraiser to appraise the Windstorm Claims. The Parties' appraisers shall then select an umpire within 14 days. American Security agrees to pay $4,000 to the appraiser/appraisal firm chosen by Puckett to serve as his appraiser with respect to the appraisal of the Windstorm Claims (the "Upfront Appraiser Payment"). Such appraiser shall provide a W-9 to American Security in advance of American Security making such Upfront Appraiser Payment. The purpose of the Upfront Appraiser Payment is to allow Puckett to choose an appraiser of his choice with the ability for such appraiser to be adequately compensated. Except as set forth in this Section, American Security has no other obligations for payment of Puckett's designated appraiser for the appraisal of the Windstorm Claims.

The appraisal panel shall enter two separate appraisal awards for (1) damages in connection with the Ian Windstorm Claim and Idalia Windstorm Claim (collectively, "Pre-2024 Windstorm Damage Appraisal"); and (2) damages in connection with the Helene Windstorm Claim and Milton Windstorm Claim (the "2024 Windstorm Damage Appraisal") (collectively, the "Windstorm Appraisal Awards"). The appraisal panel, at its discretion, may allocate damages between the Windstorm Appraisal Awards for the Pre-2024 Windstorm Damage Appraisal and the 2024 Windstorm Damage Appraisal, but may not overlap damages between the two appraisal awards (i.e., if roof replacement is included in one of the awards, it may not also be included in the second award). Photographs of the Property taken with respect to the Idalia Windstorm Claim will be

---

[1] If the Flood Settlement Payment is not deposited and needs to be reissued in the future, American Security agrees to reissue such payment upon written notice after confirming that the prior payment was not negotiated.

Initial

provided to the appraisal panel for its consideration in determining any allocations of windstorm damage between the Pre-2024 Windstorm Damage Appraisal and the 2024 Windstorm Damage Appraisal. A report from the engineering firm that performs the Structural Assessment will also be provided to the appraisal panel for its consideration.

The appraisal panel shall be provided a copy of the Certificate and this Section of the Settlement Agreement governing appraisal, and the Windstorm Appraisal Awards shall take into consideration the terms and conditions of the Certificate. Damages caused as a result of flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind, shall be excluded from the Windstorm Appraisal Awards. *See* Certificate, General Exclusions (1)(c). The Windstorm Appraisal Awards shall only include physically damaged property (as determined by the appraisal panel), without consideration for matching as there is no matching available as the subject policies are lender-placed and not subject to Florida's matching statute. The appraisers may take into consideration whether there was damage at the Property prior to Hurricane Ian, which would not be covered in connection with the Windstorm Appraisal Awards.

Within twenty (20) business days' receipt of the Windstorm Appraisal Awards, American Security shall tender payment based on the Windstorm Appraisal Awards without objection, but the Windstorm Appraisal Awards may be respectively reduced by the applicable deductibles under the Wind Policy During Idalia and the Wind Policy During Helene, respectively. American Security is also authorized to reduce the total payment to be made under the Windstorm Appraisal Awards by the Upfront Appraiser Payment. Notwithstanding any other provision, in the event that total payment for dwelling coverage under the Windstorm Appraisal Awards would exceed $484,843 or for Other Structures coverage under the Windstorm Appraisal Awards would exceed $48,484, the total payments to be made by American Security may be reduced to such amounts of coverage that were otherwise available under Coverage A and Coverage B of the Wind Policy During Helene.[2]

American Security, at its discretion and in accordance with the terms of the Certificate, may condition payment of any recoverable depreciation or ordinance & law coverage (if applicable) on the completion of repairs, which shall be completed within six (6) months following the Windstorm Appraisal Awards. Except as set forth herein, each party shall be responsible to pay for its own appraiser (i.e., if Puckett's chosen appraiser seeks more than $4,000, such excess payment would be Puckett's responsibility), but American Security will agree to pay the costs for the umpire. No appraiser may have their fee contingent on the amount of the Windstorm Appraisal Awards.

In the event that the Parties' appraisers cannot agree on an umpire, American Security's counsel will propose three candidates to Puckett that have either (1) served as a neutral umpire for at least 250 claims; or (2) have served in a judicial capacity. Puckett will then have three days to choose one of the proposed umpires to be the umpire for the Windstorm Appraisal Awards. The Parties' appraisers shall cooperate on scheduling and take reasonable steps for the Windstorm Appraisal Awards to be completed within 90 days of the appraisers' appointment.

---

[2] Nothing herein shall be deemed an admission or acknowledgment that damages for the Windstorm Appraisal Awards shall reach or be anywhere near such amounts. Rather, such provision is specifically to acknowledge a cap on damages consistent with available coverage under the Wind Policy During Helene.

Docusign Envelope ID: FAE6B486-FBCB-4975-A3E8-8BD87EB6A602

Other than the payment of the Windstorm Appraisal Awards as set forth herein, there shall be no other amounts due and owing for the Windstorm Claims, or for any damages released hereunder.

Time is of the essence for all deadlines set forth in this Section. Puckett expressly agrees that if he fails to comply timely with his obligations in this Section, he waives his right to seek any damages in connection with any of the Windstorm Claims.

**5.    Release of All Claims by Releasors against Released Parties.**

Puckett, for himself and on behalf of all Releasors, releases and discharges the Released Parties from any and all claims, whatsoever, whether such claims are known or unknown, foreseen or unforeseen, developed or undeveloped, discoverable or presently incapable of being discovered, relating in any way to any past or current damage at the Property, including, but not limited to: (a) all Claims, whether or not asserted in any CRN and/or the Lawsuit or in any lawsuit, complaint in equity, or state or federal agency or administrative proceeding; and (b) all claims (present, past or future) arising out of any actual or alleged duty, or contractual, or legal relationship, express or implied, between Puckett and the Released Parties related to any of the Claims.

This Settlement Agreement waives, releases, and prohibits all Claims, whether based on contract or tort, law or equity, and no matter the legal theory or requested relief or remedy, including, but not limited to, Claims for breach of contract, negligence, good faith and fair dealing, common law or statutory bad faith, statutory penalties, appraisal rights, appeal rights, breach of implied duties or contracts, quantum meruit, unjust enrichment, restitution, misrepresentation, strict liability misrepresentation, negligent misrepresentation, fraudulent misrepresentation, breach of fiduciary duty, fraud, constructive fraud, consumer fraud, unfair or deceptive practices, estoppel, unclean hands, attorney's fees, punitive damages, agency, negligent hiring, negligent retention, negligent supervision, agent misconduct, vicarious liability, respondeat superior, violations or administrative codes, violations of insurance codes, or violations of state or federal statutes, regulations, orders, rules, or mandates related to the Claims.

All future claims for flood or wind damages at the Property are expressly released and barred unless the damages existing in connection with the Flood Claims or the Windstorm Claims have been repaired by a licensed contractor in accordance with applicable building standards in Pinellas County, Florida.

**6.    No Assignments – Indemnification.**

Puckett represents and warrants that he has not assigned any rights, title, damages, benefits, or interests in the Lawsuit, the Claims or the Policy to any other person or entity. Puckett understands and agrees to indemnify, defend, and hold harmless the Released Parties from any and all Claims that may be asserted against any of the Released Parties relating in any way to: (a) any and all Claims specifically identified in this Settlement Agreement; (b) all Claims asserted in the Lawsuit or that could have been asserted by Puckett in the Lawsuit; (c) all Claims that could have been asserted in any other lawsuit, complaint in equity, or state or federal agency or administrative proceeding specifically related to any identified claims in this Settlement Agreement; (d) all


Initial

Claims under the Certificate or any Policy related to the Property; (e) all Claims arising out of any actual or alleged duty, or contractual, or legal relationship, express or implied, between Puckett and the Released Parties arising from the Claims; and (f) any claims, liens, demands, garnishments, subrogations, or causes of action brought by Puckett's public adjuster(s), family members, heirs, attorneys, insurers not a party to this Settlement Agreement (that is, insurers other than the Released Parties), agents, adjusters, experts, contractors, mortgagees, creditors, lenders, health care providers, or medical professionals.

**7.    <u>No Admission of Liability</u>.**

Puckett understands and agrees that nothing in this Settlement Agreement is to be construed as an admission of liability by the Company or any of the Released Parties. Puckett acknowledges that the Company denies liability of any type. Nothing herein is an admission of coverage with respect to any assignment of benefits claims that may be asserted in connection with the Claims.

**8.    <u>Stipulation for Lawsuit</u>.**

Upon return of this executed Settlement Agreement, American Security's counsel is authorized to submit the Stipulation that is attached to this Settlement Agreement to the Court in which the Lawsuit is pending.

**9.    <u>Letter to Puckett Confirming Insurance Coverages for 2024 Claims.</u>**

Within two (2) business days following receipt of this executed Settlement Agreement, American Security's counsel shall provide Puckett with a letter on his firm's letterhead that discloses the insurance coverages that Puckett has had available from American Security as of the time of the Debbie, Helene and Milton storms.

**11.    <u>Puckett Is Not Relying On Statements by the Company</u>.**

Puckett understands and agrees that in accepting the terms of this Settlement Agreement and signing this Settlement Agreement he is relying on his own judgment, belief, and knowledge, and not on any representations or statements made by the Company or anyone representing the Company. Puckett acknowledges that this Settlement Agreement accurately reflects all of the terms of the Parties' settlement and that no other promise, inducement, or agreement exists between the Parties other than is expressed within the four corners of this Settlement Agreement. Puckett stipulates that this Settlement Agreement constitutes the entire agreement between the Parties.

Puckett acknowledges that discovery in the Lawsuit and the investigation of the 2024 claims were not completed, and that Puckett might have learned additional facts during the course of the Lawsuit or investigation of the 2024 claims that could have affected Puckett's decision to enter into this Settlement Agreement. Puckett nevertheless has intentionally and voluntarily decided, after having the opportunity to consult or otherwise consulting with Puckett's counsel, to settle the Lawsuit and Claims at this time under the terms of this Settlement Agreement to avoid further expense, inconvenience, and uncertainty. Puckett specifically represents that, despite being pro se in the Lawsuit, he has had an opportunity to consult with his own attorney, Christopher Aguirre.

8


Initial

## 12.  **Tax Consequences**.

The Company makes no representation regarding any tax consequences associated with the terms of this Settlement Agreement. Puckett understands and agrees that the Company has no responsibility for any tax liability they may incur as a consequence of this Settlement Agreement or any payment hereunder.

## 13.  **Confidentiality**.

Puckett may disclose that the Lawsuit and Claims have been settled or resolved by mutual agreement and to the mutual satisfaction of the Parties. However, Puckett specifically represents and agrees that, except as provided in the following Paragraph, he will not disclose to any person or entity the terms of this Settlement Agreement, the fact of payment by the Company, the amount of payment by the Company, the facts and circumstances relating to the Lawsuit or Claims, including all aspects of the Company's handling and treatment of Puckett's claims, or any other non-public fact surrounding the Lawsuit or the settlement of the Lawsuit and Claims.

The confidentiality provisions of this Settlement Agreement shall not apply: (a) to disclosures Puckett makes to the Lender, (b) to disclosures Puckett is required to make by applicable laws, regulations, or orders of courts of competent jurisdiction; (c) to disclosures to third parties who have a legitimate need to know the amount or terms of this Settlement Agreement (such as Puckett's attorneys, accountants, lenders, financial or tax advisors); or (d) to any action brought to enforce the terms of this Settlement Agreement, but only to the extent necessary to prosecute that action. Should Puckett or his agents (including attorneys) disclose confidential information, the person or entity to whom the information is disclosed shall be advised that the information is confidential and must be so kept. Any breach of confidentiality by a person or entity to whom Puckett and his agents (including attorneys) disclose confidential information is chargeable to Puckett. Puckett understands and agrees that the confidentiality provisions of this Settlement Agreement are material terms of the Settlement Agreement.

## 14.  **Non-Disparagement**.

Puckett and his agents (including attorneys) agree not to make any disparaging statements (oral or written), directly or indirectly, to the media or members of the general public, or with the intent the statements reach the media or the general public, about the Company and the Released Parties (including, without practices or policies), the Lawsuit, any CRN, or the Policies. Disparaging statements include statements that are false, statements that are misleading, and statements that might tend to cast the Company of Released Parties in a negative light, regardless of their truth or falsity.

## 15.  **Covenant Not To Sue**.

Puckett, for himself and on behalf of all Releasors, agree that none of them will commence any future lawsuit, action, or complaint of any nature against any Released Party relating to: (a) Claims asserted in any CRN and/or the Lawsuit; (b) Claims that could have been asserted in any other legal, equitable, agency or administrative proceeding; (c) any Claims under the Certificate and  Policy that have been released, as more fully set forth in paragraph 5; or (d) Claims arising out of any actual or alleged contractual relationship, express or implied, between Puckett and the

Company or the Released Parties related to the Claims. If Puckett violates this covenant not to sue, any Released Party shall be entitled to recover from Puckett all reasonable attorneys' fees and costs incurred by the Released Party in defending against any claims. This covenant not to sue shall also extend to cover any future claims reported by Puckett to American Security for any damages that have otherwise been released under this Settlement Agreement.

16.    **Right To Cure**.

The Parties agree that if any Party believes any other Party has breached the terms of this Settlement Agreement, the Party believing a breach has occurred must give the other Parties written notice of any alleged breach and a 14-day right to cure prior to initiating an action for breach of this Settlement Agreement.

17.    **Choice of Jurisdiction and Law, and Jury Trial Waiver**.

If a dispute arises between the Parties concerning the subject matter of this Release, the Parties agree that any action filed in connection with the dispute shall be filed in state or federal court in the State of Florida and that the law of the State of Florida shall apply to the interpretation and enforcement of the Release, without reference to choice of law principles. THE PARTIES WAIVE ANY RIGHT TO JURY TRIAL WITH RESPECT TO ANY CLAIMS RELATED IN ANY WAY TO THIS SETTLEMENT AGREEMENT.

18.    **Entire Agreement/Amendments – Merger**.

The Parties understand and agree that this Settlement Agreement constitutes the entire agreement and understanding between the Parties and this Settlement Agreement supersedes all prior oral and written agreements, understandings, statement, and representations (including the Prior Agreement for settlement dated July 31, 2024). The Parties understand and agree that any amendment to this Settlement Agreement must be in writing and signed by the Parties.

19.    **Mutual Drafting and Construction**.

The Parties understand and agree that this Settlement Agreement is purely voluntary and was prepared for the mutual benefit of the Parties. Neither Puckett nor the Company shall be considered to be a unilateral or singular drafter of this Settlement Agreement. The Parties stipulate they had the opportunity to have their respective counsel (if any) review and approve this Settlement Agreement. The Parties understand and agree that this Settlement Agreement shall be interpreted in accordance with the plain meaning of its terms and shall not be construed strictly for or against any of the Parties.

20.    **Severability**.

If any provision of this Settlement Agreement is held by a court of competent jurisdiction to be invalid or to conflict with applicable federal, state or local law, the Settlement Agreement shall be deemed to be reformed to remove that invalid provision. However, all remaining provisions of the Settlement Agreement shall remain in full force and effect.

Initial

21.    <u>**Execution by Puckett Sufficient – Execution by Company Not Required**</u>.

Puckett understands and agrees that this Settlement Agreement will not be executed by the Company or the Released Parties in order for this Settlement Agreement to be fully effective and binding upon execution by Puckett.

22.    <u>**Signature(s)**</u>

The Parties understand, stipulate and agree that a facsimile or electronic transmission of any signature of any person(s) signing this Settlement Agreement is fully effective and as binding as an original signature delivered to the other party.

**THE PERSONS SIGNING THIS SETTLEMENT AGREEMENT AGREE AND REPRESENT AS FOLLOWS: THEY HAVE READ THE SETTLEMENT AGREEMENT, THEY UNDERSTAND THE SETTLEMENT AGREEMENT, THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOOSING ABOUT THE MEANING AND CONSEQUENCES OF THE SETTLEMENT AGREEMENT, THEY HAVE HAD THE SETTLEMENT AGREEMENT TRANSLATED FOR THEM (IF APPLICABLE), AND THEY FREELY AND VOLUNTARILY SIGN THE SETTLEMENT AGREEMENT.**

Signed by:

11/6/2024                          November 5, 2024

**Puckett:  David W. Puckett**                **Effective Date**

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:24-cv-02038

**AMERICAN SECURITY INSURANCE
COMPANY,**

      Plaintiff,

vs.

**DAVID W. PUCKETT,**

      Defendant.

_____/

### **JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE**

Defendant, David W. Puckett, and Plaintiff, American Security Insurance Company, pursuant to Fed. R. Civ. P. 41, hereby stipulate that the above-captioned action, including all claims, is voluntarily dismissed with prejudice, with each side to pay their own fees and costs, and subject to the parties' rights under their Settlement Agreement and the Court to retain jurisdiction for the parties to enforce their rights under their Settlement Agreement.

Respectfully Submitted,

| | |
|---|---|
| _s/ David W. Puckett_ | _s/ Brian H. Koch_ |
| David W. Puckett | Brian H. Koch, Esq. |
| 11120 E. 5th Street | Florida Bar No. 637335 |
| Treasure Island, Florida 33706 | HOLLAND & KNIGHT LLP |
| info@cognitive-rs.com | 515 East Las Olas Boulevard, Suite 1200 |
| _Defendant, Pro Se_ | Fort Lauderdale, Florida 33301 |
| | Tel: 954. 525.1000 |
| | Fax: 954.463.2030 |
| | brian.koch@hklaw.com |
| | _Counsel for American Security_ |

12